IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALLEN WERNER,

    Plaintiff,

v.

STURGEON ELECTRIC COMPANY,
INC. dba STURGEON ELECTRIC,

    Defendant.

No. 3:16-cv-01334-MO

OPINION AND ORDER

MOSMAN, J.,

This matter comes before me on Defendant's Motion for Summary Judgment [21]. Plaintiff responded in opposition [28], and Defendant replied [37]. Plaintiff Allen Werner brings seven claims against his former employer, Defendant Sturgeon Electric ("Sturgeon"), alleging that he was unlawfully fired for discriminatory or retaliatory reasons stemming from an on-the-job injury. Mr. Werner's first claim alleges Sturgeon unlawfully discriminated against him for invoking the workers' compensation system. His second claim alleges Sturgeon unlawfully failed to reinstate him after his injury. His third, fourth, fifth, and sixth claims allege disability discrimination and retaliation under Oregon law as well as the Americans with Disabilities Act ("ADA"). His seventh claim alleges Sturgeon unlawfully retaliated against him as a whistleblower. For the reasons discussed below, I GRANT summary judgment on Mr. Werner's second claim, and DENY summary judgment on the remaining claims.

## BACKGROUND

Sturgeon hired Mr. Werner, a journeyman electrician, to work on one of its job sites. Mr. Werner's primary duty on the job was stripping electrical cables. In the course of stripping a cable, Mr. Werner sustained a deep cut on one hand that caused tendon damage.

It is undisputed that every morning during job site safety meetings, Mr. Werner and his coworkers signed off on notes that detailed safety equipment they were required to use. In this case, cut-resistant gloves are listed on the safety meeting notes that Mr. Werner signed. While Mr. Werner and Sturgeon agree that he was not wearing cut-resistant gloves at the time he sustained the injury, Mr. Werner maintains that Sturgeon did not provide any cut-resistant gloves on the job site. Sturgeon disputes this fact, and claims that it kept a well stocked supply of cut-resistant gloves on the job site for its workers.

The exact source of Mr. Werner's injury is also in dispute. Mr. Werner claims he was injured by the utility knife that Sturgeon provided for stripping cables, which he alleges is an unsafe tool for the job. Sturgeon claims that Mr. Werner was cut by a component of the cable itself, rather than the utility knife. In any event, Mr. Werner received stitches at an emergency room on the day of the injury, which was a Thursday. His treating physician also advised him not to use his hand until a surgeon cleared him to do so.

The next day, Mr. Werner reported to the job site to collect his tools and ask for time off to attend a follow-up appointment with a surgeon that afternoon. Sturgeon superintendent Drew Tolliver approved his request. Sturgeon also claims that Mr. Tolliver offered Mr. Werner light duty work at this time, and Mr. Werner refused it. Mr. Werner states that he cannot recall being offered any light duty work.

The surgeon was unable to see Mr. Werner at his scheduled follow-up time, and Mr. Werner's attempts to get an appointment over the weekend with another surgeon were unsuccessful. Ultimately, Mr. Werner learned he would have to wait until Monday to have a follow-up appointment with a surgeon.

On Saturday, Mr. Werner did not report for work as scheduled. That evening, Mr. Tolliver decided to terminate Mr. Werner's employment. On Monday, Mr. Tolliver delivered the termination notice to Mr. Werner after his follow-up appointment with the surgeon.

Throughout the time between Mr. Werner's injury and his termination, Sturgeon management exchanged text messages and emails about the situation that included references to "lost time," what Mr. Werner's rights to union representation were, and how best to control Mr. Werner's medical care to avoid a workers' compensation claim that would negatively affect Sturgeon. Sturgeon managers also testified that avoiding lost time was a concern in any employee injury in order to keep insurance premiums down, and Sturgeon attempted to send members of management into Mr. Werner's medical appointments with him, although Mr. Werner did not allow them into the exam room with him.

Based on these facts, Mr. Werner contends that his termination was unlawful discrimination because of his workers' compensation claim and his injury, which he claims is a protected impairment under the ADA and Oregon disability law. He also claims he was retaliated against as a whistleblower based on comments he made to coworkers and Mr. Tolliver about the safety of the work site and tools. Sturgeon denies that it fired Mr. Werner for discriminatory or retaliatory reasons, and instead claims it fired Mr. Werner because he failed to follow safety protocol by not wearing cut-resistant gloves. Sturgeon also cites Mr. Werner's

failure to appear for work on the Saturday following his injury as a secondary reason for his firing.

## LEGAL STANDARD

The Court may grant summary judgment when a movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the record in the light most favorable to the nonmoving party, and "if reasonable minds could differ" regarding the facts and inferences therein, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *see also Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir. 1989). The Ninth Circuit "'require[s] very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record.'" *Lam v. Univ. of Haw.,* 40 F.3d 1551, 1564 (9th Cir. 1994) (quoting *Sicho-Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1111 (9th Cir. 1991) (superseded on other grounds)).

*McDonnell Douglas* burden shifting applies in this case, which dictates that if Mr. Werner can make a prima facie case for discriminatory treatment, Sturgeon must follow up with a legitimate, nondiscriminatory explanation for its action. *See McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1122 n.16 (9th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973)). If Mr. Werner can then demonstrate that Sturgeon's explanation is pretextual, his claim will survive summary judgment. *Id.*

///

///

///

## DISCUSSION

### I. Workers' Compensation Discrimination under ORS 659A.040

Mr. Werner's first claim alleges that Sturgeon violated ORS 659A.040, which prohibits an employer from "discriminat[ing] against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized [the workers' compensation system]." Or. Rev. Stat. Ann. § 659A.040. To establish a prima facie case, Mr. Werner must demonstrate that (1) he invoked the workers' compensation system; (2) Sturgeon discriminated against him with respect to hire, tenure, or terms or conditions of his employment; and (3) Sturgeon discriminated against him because he invoked the workers' compensation system. *Williams v. Freightliner, LLC*, 100 P.3d 1117, 1121 (Or. Ct. App. 2004).

As discussed below, I find that Mr. Werner introduced sufficient evidence into the record to support a prima facie case for this claim. Mr. Werner also introduced sufficient evidence to support an inference that Sturgeon's alleged nondiscriminatory explanation for firing him could be pretextual. Accordingly, I find that there is a genuine dispute of material fact relevant to this claim, and DENY summary judgment.

#### A. *Mr. Werner invoked the workers' compensation system.*

The Oregon Administrative Rules define "invoke" for the purposes of ORS 659A.040 as "includ[ing], but not limited to, a worker's reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury." Or. Admin. R. 839-006-0105(7); *see also McPhail v. Milwaukie Lumber Co.*, 999 P.2d 1144, 1150 (Or. Ct. App. 2000) (confirming the OAR's definition of "invoke" and holding that an employee's verbal notification to his employer of a stomach condition and its possible relationship to work stress "gave [the employer] knowledge of an existing claim.").

Mr. Werner undisputedly reported his injury to his direct supervisor at the time it occurred and requested medical attention. Sturgeon argues that its managers did not have direct knowledge of Mr. Werner's invocation of the workers' compensation system because none of them witnessed his injury and they did not know that it was severe enough to implicate the workers' compensation system. However, severity or perceived severity of the on-the-job injury is not relevant to whether or not it was reported, which is all the law requires for the workers' compensation system to be "invoked." *McPhail*, 999 P.2d at 1150.

Even if it were relevant, a reasonable jury could infer that Mr. Tolliver knew Mr. Werner's injury was more than a minor cut when Mr. Werner insisted on going to the emergency room and was advised by a doctor not to use his left hand until cleared by a surgeon. Mr. Werner points to undisputed evidence in the record that shows Sturgeon management's awareness of his injury and medical treatment. Accordingly, Mr. Werner has sufficiently demonstrated that he invoked the workers' compensation system.

**B.** *There is a genuine dispute of material fact as to why Mr. Werner was fired.*

It is not disputed that Mr. Werner's employment was terminated, which constitutes a discrimination in the tenure, terms, or conditions of his employment for the purposes of the second element of this claim. *See Davis v. Tri-Cty. Metro. Transp. Dist.*, 45 F. Supp. 3d 1222, 1240 (2014) (defining actionable conduct under ORS § 659A.040 as employment actions with respect to hiring, tenure, or a term or condition of employment). Still, Mr. Werner must demonstrate causation between his invocation of the workers' compensation system and his termination.

Causation between an adverse employment action and protected activity may be inferred from circumstantial evidence. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). The

Ninth Circuit has held that temporal proximity between protected activity and an adverse employment action can support a finding of causation at the summary judgment stage. *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (stating that "three to eight months is easily within a time frame that can support an inference of retaliation."). Oregon courts have similarly held that temporal proximity between protected activity and an adverse employment action supports the inference of retaliation under the "substantial factor" test. *See Huber v. Or. Dept. of Educ.*, 230 P.3d 937, 944 (Or. Ct. App. 2010).

In this case, only one day elapsed between the time of Mr. Werner's injury and the time that David Thomas, the job site's quality control manager, first suggested that he be fired. Mr. Tolliver communicated his agreement in an email on Saturday, the second full day since the injury. Accordingly, the temporal proximity alone is sufficient evidence to show causation.

### C. *Sturgeon's alternative, nondiscriminatory explanation for Mr. Werner's firing could reasonably be found to be pretextual.*

Since Mr. Werner has met his burden of demonstrating a prima facie case of retaliation, Sturgeon must show a nondiscriminatory reason for terminating Mr. Werner's employment. If Sturgeon does so, Mr. Werner must then demonstrate Sturgeon's nondiscriminatory reason was pretextual.

Sturgeon has met its burden of providing a nondiscriminatory reason for Mr. Werner's termination. Specifically, Sturgeon claims that it terminated Mr. Werner because he failed to follow safety protocols by refusing to wear cut-resistant gloves and because he failed to appear for work on the Saturday following his injury. Sturgeon cites the termination notice, emails discussing the termination, and deposition testimony of managers as evidence of its reasoning. That evidence is sufficient to show a nondiscriminatory reason for Mr. Werner's termination.

Mr. Werner has also introduced evidence from which a reasonable jury could infer that Sturgeon actually terminated his employment due to concerns about his workers' compensation claim, and that its stated reasons are pretextual. Doug Donahue, safety engineer for the job, and Kevin Martin, Western Regional Safety Director for Sturgeon, both testified in depositions regarding the company's general interest in avoiding "lost time" workers' compensation claims, which occur when employees miss work due to injuries. In particular, Mr. Martin stated that lost time claims can cause insurance rates to go "sky high" and can ultimately limit a company's ability to bid for jobs. Mr. Martin also testified that a text message he sent the day after Mr. Werner's injury was meant to express concern about the injury "turning into [a] lot of time." Similarly, Mr. Donohue testified that he was asked to accompany Mr. Werner to his appointment to "try and see if [he could] work with the doctor to avoid a recordable."

Mr. Werner has further undermined Sturgeon's explanation with evidence that suggests Sturgeon generally did not terminate an employee for his first safety offense. Specifically, another employee was injured in a similar matter in an unrelated incident a few weeks after Mr. Werner's injury, but that employee was not terminated. Notably, that employee did not file a workers' compensation claim.

Mr. Werner has met his burden of citing evidence to support a finding that Sturgeon's nondiscriminatory explanation is pretextual. Accordingly, I DENY summary judgment for Mr. Werner's first claim.

## II.   Failure to Reinstate an Injured Worker under ORS 659A.043

Mr. Werner's second claim alleges that Sturgeon violated ORS 659A.043, which states, in relevant part, that "[a] worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such

reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position." Or. Rev. Stat. Ann. § 659A.043. To establish a prima facie case, Mr. Werner must demonstrate that (1) he suffered a compensable injury; (2) he was able and not precluded from performing the duties of his position; (3) his former position existed and was available; (4) he made a demand for reinstatement or Sturgeon made it known that reinstatement would not be considered; and (5) Sturgeon failed to reinstate Mr. Werner to his prior position. Or. Admin. R. 839-006-0130(1),(5),(7); *see Anderson v. Hibu, Inc.*, 26 F. Supp. 3d 1019, 1031 (D. Or. 2014).

Sturgeon has established through evidence in the record that Mr. Werner cannot satisfy the fourth element of the claim—that he made a demand for reinstatement—and there is no genuine dispute of a material fact as to that conclusion. It is undisputed that Mr. Werner did not apply for reinstatement. Given that, he can only establish the fourth element of the claim if he can demonstrate that Sturgeon made it known that reinstatement would not be considered. *Id.*

On the contrary, the record shows that Mr. Werner knew he was eligible for rehire. Specifically, he had successfully requested that his ineligibility be changed to a 30-day duration rather than the one year duration that was listed on his termination notice. Mr. Werner does not demonstrate with any other evidence that Sturgeon was unwilling to rehire him.

Accordingly, I GRANT summary judgment on Mr. Werner's second claim.

### III. Disability Discrimination under the ADA

Mr. Werner's third claim alleges that Sturgeon violated the ADA by firing him. To establish a prima facie case for disability discrimination under the ADA, Mr. Werner must demonstrate that (1) he had or was perceived as having a disability; (2) he was a qualified individual capable of performing the essential functions of his job; and (3) he suffered an adverse

employment action because of his disability. 42 U.S.C. § 12112(a); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

Neither party disputes that Mr. Werner was a qualified individual capable of performing the essential functions of his job. I find that there are genuine disputes of material facts related to the whether Mr. Werner was "disabled" under the ADA and whether causation existed between his termination and his impairment.

### A. *There is a genuine dispute of material facts that would support finding Mr. Werner to be "disabled" under the ADA.*

The ADA and the Equal Employment Opportunity Commission ("EEOC") define "disability" as "(A) a physical or mental impairment that substantially limits major life activities of [the individual] (the "actual disability" prong); (B) a record of such an impairment (the "record of" prong); or (C) being regarded as having such an impairment (the "regarded as" prong)." 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(a). Mr. Werner advances his claim under the "actual disability" prong, and has introduced sufficient evidence of his impairment—the loss of or diminished use of his left hand—for a reasonable jury to find that it substantially limited a major life activity, thus satisfying the first element of the claim.

Sturgeon argues that because Mr. Werner's impairment was temporary, it cannot be considered a disability under the ADA. While this may have been true before the ADA Amendments Act of 2008 ("the ADAAA"), the ADAAA was introduced specifically "to override *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, in which the Supreme Court had adopted a strict construction of the term 'disability' and suggested that a temporary impairment could not qualify as a disability under the Act." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) (citation omitted). Under the EEOC regulations related to the ADAAA, effects of an impairment that last fewer than six months can still be considered

substantially limiting for the purposes of proving an actual disability. *Id; see also* 29 C.F.R. § 1630.2(j)(1)(ix). This is in accordance with the ADAAA itself, which instructs that the definition of disability "shall be construed in favor of broad coverage . . . to the maximum extent permitted," and that the term "substantially limits" should be interpreted consistently with the liberalized purposes of the ADAAA. 42 U.S.C. § 12102(4)(A)-(B).

In *Summers,* the first Circuit-level review of the ADAAA, the Fourth Circuit held that an employee who sustained broken bones and tendon damage in his legs qualified as disabled. *Summers*, 740 F.3d at 333 (4th Cir. 2014). The Court explicitly held that an injury can be an impairment under the regulations, and that the ADAAA only imposes a durational requirement on "regarded as" disabilities, not "actual" disabilities, like the one Mr. Werner claims to have. *Id.* at 332.

While the Ninth Circuit has not yet interpreted the ADAAA, the Northern District of California followed the Fourth Circuit's broad application from *Summers* in *Barrilleaux v. Mendocino County*, 61 F. Supp. 3d 906, 916 (N.D. Cal. 2014). In *Barrilleaux*, the plaintiff advanced a claim for disability discrimination based on an impairment that necessitated crutches and made it difficult for her to traverse stairs. The plaintiff's claim survived a motion to dismiss, and the Court cited the Fourth Circuit's holding that "an expansive definition [of impairment] surely includes broken bones and torn tendons." *Barrilleaux v. Mendocino Cty*, 61 F. Supp. 3d at 916 (citing *Summers,* 740 F.3d at 332); *see also Castillo v. U.S. Internal Revenue Serv.*, No. 1:13-CV-00517-SKO, 2016 WL 310114 (E.D. Cal. Jan. 26, 2016) (stating that an exhaustive analysis of whether an injury that is expected to eventually heal is "temporary" or "permanent" contravenes Congress's stated intent of expansive coverage under the ADAAA).

Mr. Werner has testified that even after healing from surgery, his hand is impaired to a degree that limits his ability to do various recreational activities and has significantly diminished the speed at which he can perform his work. More importantly, the doctor's note in the record states that at the time that Mr. Werner was fired, he could not use his left hand at work at all. This evidence is sufficient for a reasonable jury to find Mr. Werner was substantially limited by his impairment, and thus, disabled, at the time his employment was terminated.

### B. *There is a genuine dispute of material fact as to why Mr. Werner was fired.*

The third element of this claim requires Mr. Werner to demonstrate causation between his disability and the termination of his employment. Like his first claim, Mr. Werner argues that Sturgeon management was concerned about a lost time claim, which would precipitate from Mr. Werner missing work due to his injury and the time it took to receive medical care. Specifically, Mr. Werner argues that because he was unable to see a surgeon until Monday, he could not work on Saturday, and that the missed day of work would be counted as lost time. Mr. Werner argues that Sturgeon management's concerns about lost time led them to terminate him when they determined he would need at least that day off work due to his injury.

Sturgeon argues that it could not have terminated him for being disabled because management was unaware of the severity of his impairment when they fired him. Specifically, Sturgeon claims that its management thought Mr. Werner was exaggerating his injury, and that it was just a minor cut. As a result, Sturgeon argues, there can be no causation without management's actual knowledge of Mr. Werner's disability. It is not disputed, however, that Sturgeon management received and circulated the doctor's note advising Mr. Werner not to use his left hand at work until a surgeon could clear him to do so, which undermines its claim to ignorance.

Sturgeon relies on the same nondiscriminatory alternative reason for firing as it did in claim one, and Mr. Werner's same arguments apply for why it could be found to be pretextual. Accordingly, I DENY summary judgment.

## IV.   Disability Discrimination under ORS 659A.112

Mr. Werner's fourth claim alleges disability discrimination under ORS 659A.112, which, in relevant part, prohibits employers from discharging an employee on the basis of disability. Or. Rev. Stat. Ann. § 659A.112. Oregon law follows federal disability law, with some additional provisions. *Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) ("The standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law."). Since this claim does not invoke any of the additional provisions under Oregon law, the arguments for Mr. Werner's fourth claim are identical to those in his third claim, and I DENY summary judgment for this claim as well.

## V.   Disability Retaliation under ORS 659A.109

Mr. Werner's fifth claim alleges that Sturgeon violated ORS 659A.109, which prohibits employers from discriminating against an employee with respect to hire, tenure, or any term or condition of employment because the employee has invoked or utilized procedures provided for in the Oregon statutes that prohibit disability discrimination. Or. Rev. Stat. Ann. § 659A.109. The Oregon Court of Appeals has also held that ORS 659A.109 protects an employee who seeks benefits or accommodations even if the employee turns out not to be disabled. *Herbert v. Altimeter, Inc.*, 218 P.3d 542, 549 (Or. Ct. App. 2009). The key element that Mr. Werner must demonstrate here is, once again, causation.

Mr. Werner claims that he sought accommodation for his disability by requesting time off work to see a surgeon. He further argues that Sturgeon's secondary stated reason for his

termination—his failure to appear for work on Saturday—is evidence that he was retaliated against for seeking a disability accommodation, since he was still waiting to see a surgeon at that time. Sturgeon argues that Mr. Werner did not request any leave, but the record reflects that Mr. Tolliver approved him taking Friday off work to attend the originally scheduled appointment. Since Mr. Werner was unable to see a surgeon at that time, it would be reasonable to infer that he would need to take additional time off until the rescheduled appointment on Monday. A reasonable jury could also then infer that in order to avoid the lost time that an additional day off work would cause, Sturgeon decided to terminate Mr. Werner's employment.

Sturgeon's alternative nondiscriminatory explanation—that Mr. Werner was fired for violating safety protocol—and its potentially pretextual nature are discussed above.

Accordingly, I find that Mr. Werner has introduced a genuine dispute of material fact on his fifth claim, and I DENY summary judgment.

## VI. Failure to Accommodate under ORS 659A.112 and 659A.118

Mr. Werner's sixth claim alleges that Sturgeon has violated ORS 659A.112 and 659A.118, which require an employer to make reasonable accommodations for an employee with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship. Or. Rev. Stat. Ann. §§ 659A.112(2)(e); 659A.118. The Oregon Administrative Rules further clarify that an employer must engage in "the meaningful interactive process" for identifying reasonable accommodation "regardless of whether reasonable accommodation would be possible." Or. Admin. R. 839-006-0206(6). In order to demonstrate a good faith interactive process, an employer must engage in "cooperative behavior which promotes the identification of an appropriate accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d. 1105, 1115 (9th Cir. 2002)

(interpreting the ADA, which Oregon disability law follows) (judgment vacated on other grounds).

Sturgeon argues that it made a reasonable accommodation by offering Mr. Werner light duty work, which he refused. However, Mr. Werner testified that he did not know what light duty work was available and that he could not recall being offered any. That alone creates a genuine issue of material fact for this claim.

Sturgeon further argues that even if I find that it failed to engage in the interactive process to determine appropriate accommodations, its nondiscriminatory explanation that it planned to fire Mr. Werner anyway for his failure to comply with safety protocol means it would have been a waste of time to try to determine an accommodation for his impairment. To support this explanation, Sturgeon notes that the decision to fire Mr. Werner was made prior to his Monday appointment. However, if the reasonable accommodation would have been to excuse Mr. Werner from work until he could have a follow-up appointment, then the decision to terminate him happened in exactly the time period when Sturgeon should have been accommodating his disability, or at least discussing with him whether it would be possible.

The Ninth Circuit has held that a leave of absence from work can be a reasonable accommodation. *Dark v. Curry Cty.*, 451 F.3d 1078, 1090 (9th Cir. 2006). Further, the question of what a reasonable length of leave would be is typically considered a factual issue. *See Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004).

Accordingly, I find that the record reflects genuine disputes of material facts with regard to Mr. Werner's sixth claim, and I DENY summary judgment.

## VII. Whistleblower Retaliation under ORS 659A.199

To make a prima facie case for this claim, Mr. Werner must show that (1) he engaged in a protected activity; and (2) he suffered an adverse employment action (3) because he engaged in the protected activity. *Larmanger v. Kaiser Found. Health Plan of the Nw.*, 895 F. Supp. 2d 1033, 1049 (D. Or. 2012). Mr. Werner has introduced evidence that creates a genuine dispute of material fact, and I DENY summary judgment as a result.

### A. *There is a genuine dispute of material fact as to whether Mr. Werner has engaged in protected activity.*

This Court has defined "protected conduct" under ORS 659A.199 as an employee making a report to his employer or a third party that is "intended to or likely to result in a criminal or civil proceeding." *Merrill v. M.I.T.C.H. Charter School Tigard*, No. 10-219-HA, 2011 WL 1457461 at *8, (D. Or. Apr. 4, 2011) (citations omitted). In *Merrill*, the Court held that an employee's complaints to family members about her employer's alleged violations did not constitute protected conduct under ORS 659A.199. *Id.*

Unlike in *Merrill*, Mr. Werner has provided sufficient evidence for a jury to conclude that he engaged in protected activity. While he did not file an Occupational Safety and Health Administration ("OSHA") complaint until roughly three weeks after he was discharged, Mr. Werner testified he had numerous conversations with Mr. Tolliver and his coworkers about his safety concerns related to the work site, weather conditions, and tools provided. Furthermore, Mr. Werner cites a conversation with Mr. Tolliver on the day of the injury which could reasonably be found to indicate Mr. Tolliver had concerns about Mr. Werner reporting a violation.

In the conversation, Mr. Tolliver allegedly told Mr. Werner repeatedly that he thought Mr. Werner had injured himself on the cable he was stripping, rather than the provided utility

knife. Mr. Werner argues that because he had previously expressed to Mr. Tolliver that he thought the utility knives were unsafe tools, Mr. Tolliver's repeated assertion that the injury came from a sharp component of the cable itself, rather than the knife, is evidence that he wanted to influence Mr. Werner into a cover-up of a safety violation. I find this evidence sufficient to create a genuine dispute of material fact as to whether Mr. Werner engaged in protected activity.

### B. *Mr. Werner has demonstrated causation between his safety concerns and his termination.*

Mr. Werner has also sufficiently demonstrated causation between his whistleblowing activity and his termination. In order to establish causation, Mr. Werner must show that the protected activity was "a substantial factor in the motivation to discharge him" in order to demonstrate causation. *Seitz v. Albina Human Res. Ctr.*, 788 P.2d 1004, 1010 (Or. Ct. App. 1990).

Mr. Werner argues that the temporal proximity between the conversation with Mr. Tolliver and his termination supports an inference of causation. As stated above, temporal proximity can support an inference of retaliation under the "substantial factor" test. *Huber*, 230 P.3d at 944 (2010). For this claim, the relevant temporal proximity exists between Mr. Werner's termination and his protected activity, rather than his injury. Since Mr. Werner was only employed by Sturgeon for eight days before he sustained the injury, it is reasonable to infer sufficient temporal proximity between his comments about safety concerns and his termination.

Accordingly, I find that Mr. Werner has introduced sufficient evidence to create genuine disputes of material facts related to his whistleblower claim, and I DENY summary judgment.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [21] is GRANTED in part and DENIED in part. The evidence is sufficient to find genuine disputes of

17 – OPINION AND ORDER

material facts related to Mr. Werner's allegations that he was disabled, that Sturgeon's concerns about lost time caused his termination, and that Sturgeon failed to accommodate his disability. Accordingly, I DENY summary judgment for claims 1, 3, 4, 5, 6 and 7. However, Mr. Werner has failed to meet his burden to make a prima facie case for his failure to reinstate claim, and I GRANT summary judgment on claim 2.

IT IS SO ORDERED.

DATED this \_\_ day of August, 2017.

MICHAEL W. MOSMAN
Chief United States District Judge